# HAUPT *v.* WRIGHT.

EQUITY; INJUNCTIONS; OFFICERS; PATENTS.

1. Where the patentee of a design for the construction of jetties arranged with a government contractor engaged in deepening a channel in a certain harbor, to complete a jetty at such point in accordance with his design, and this was done; but subsequently, the government engineers having convinced Congress that the jetty as constructed was impracticable, an appropriation was made and a contract awarded for the construction of an auxiliary jetty and a modification of the one already constructed,—a bill in equity by the patentee against the Secretary of War and Chief of Engineers of the Army will not lie to enjoin them from permitting such work to be done, on the theory that a sufficient time has not been allowed to elapse to demonstrate the utility of the jetty constructed according to complainant's design. (Distinguishing *Fried. Krupp Aktiengesellschaft* v. *Crozier, ante,* 1.)
2. A patent right in an invention does not give to the patentee title to a thing made in violation of his patent.

No. 1898. Submitted December 7, 1908. Decided January 5, 1909.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, sustaining a demurrer to a bill in equity for an injunction, discharging a rule to show cause why a temporary restraining order should not be granted and dismissing the bill of complaint. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia dismissing appellant's bill to enjoin Luke E. Wright, the Secretary of War, and Alexander McKenzie, the Chief of Engineers of the United States Army, from completing certain river and harbor improvements at Aransas Pass,

Texas, authorized by the rivers and harbors act of March 2, 1907.

The material averments of the bill are, in substance, as follows: Appellant, Lewis M. Haupt, is a patentee of a design for the construction of a system of dikes, jetties, and breakwaters, the function of which is to deepen channels in rivers and harbors. The design is novel in that it includes a single curved jetty with a return curve. The value of this design to complainant depends largely upon the demonstration of its practicability and utility.

From 1853 to 1890 various attempts had been made to secure a navigable channel for ships of heavy draft at Aransas Pass. In 1890 the Aransas Pass Harbor Company, a private corporation, attempted, under authority of the act of Congress of May 12, 1890, to create in this harbor a channel adequate for all sea-going vessels. Complainant's attention being drawn to this harbor as affording an opportunity for the exemplification of his design, he authorized the board of directors of the company to use his patent. The company thereupon caused necessary surveys to be made, and awarded a contract for the partial construction of a curved breakwater conforming to complainant's patent. Thereafter, in 1899, the company conveyed by deed to the United States all its rights in the work then constructed.

During the 3d session of the 55th Congress, complainant proposed to the House committee on rivers and harbors that for the compensation of $700,000 he would, through the utilization of his patent, create a channel 20 feet deep, and of the required width, at Aransas Pass. The committee declined this offer, owing, as complainant states, to the criticism of the officers of the corps of engineers, "but desiring a demonstration of the effect of that part of said curved jetty which had been constructed, they recommended the removal of said portion of a jetty constructed by the United States in the years 1880 to 1885," and an appropriation to that end was made by Congress. At the 1st session of the 57th Congress, appellant again appeared before the House committee with an offer to create a

channel at Aransas Pass for $500,000. This offer was not accepted, but complainant says it became manifest that the committee favored the adoption of his design and the completion of the jetty in conformity therewith; that an appropriation of $250,000 was made on June 13, 1902, for continuing the improvement, the appropriation providing that the work should be confined to the completion of the north jetty in accordance with the design of said Aransas Pass Harbor Company. The complainant, on examining a copy of the specifications prepared by the United States engineer at Galveston, Texas, discovered "that they differed in several essential particulars from those of said contract let by the Aransas Pass Harbor Company, and provided for a return to the plan of the Army engineers." After some correspondence, complainant succeeded in having the specifications brought into substantial agreement with those of the said company. The complainant thereupon arranged with one Ripley, an engineer and contractor, to submit a bid on said work, which bid, being lower than any other, was accepted and the contract awarded thereon. Said Ripley proceeded between June 23, 1903, and September 17, 1904, to construct the part of said jetty for which the above specifications and appropriation provided. Such part of said jetty as remained to be constructed when the work of said Ripley was completed was thereafter built under other appropriations of Congress, and was completed during the month of June, 1906.

Complainant states that, in the absence of any hard obstruction in the channel and with the aid of a little dredging, a very few months after the completion of the jetty would have sufficed for the clearing of the channel to a depth of 20 feet and the desired width, but, said dredging being denied, the influence of the jetty on the channel could not be so great or so apparent, and it could not fully perform its function in less than three or four years from its completion. This, complainant states, was fully explained to the committees of Congress at the hearing in 1902.

After stating that said jetty is steadily deepening the channel and has already accomplished much of what it was intended to

do, the complainant says that Congress, pursuant to a report of the board of engineers having supervision of river and harbor improvements, made an appropriation under the act of March 2, 1907, contemplating a return to the original two-jetties plan at Aransas Pass, and that the contract for the work authorized has been awarded one David M. Picton, who, complainant believes, contemplates the early commencement of operations.

Complainant further states that the theory and operation of the two-jetties plan "is so radically different from that of said existing jetty that, in any event, it would inevitably efface complainant's design and thus prevent its full demonstration," and the complainant thereby would be greatly discredited and irreparably damaged.

After stating that there is no emergency for the performance of the work covered by the contract of said Picton, and that, if the work be deferred, "said reaction jetty will in the meanwhile have scoured away much sand and so increased the width and depth of the navigable channel," the complainant prays for a temporary injunction forbidding the performance of work under the Picton contract, "and any and all other interference with said existing jetty in the Aransas Pass harbor, or with the operations of the same;" and "that at the hearing said injunction be continued in effect for not less than four years from the date of the filing of this bill or until Congress shall have provided for compensation to him for said use of his design and said impairment of its value, and he shall have received the award so authorized."

The appellees demurred to the bill, and also filed an answer to the rule to show cause; but it is not necessary to consider the answer.

*Mr. Benjamin Carter* and *Mr. Osgood H. Dowell* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr Stuart McNamara,* Assistant, for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

The case made by the bill amounts to this: Complainant, being desirous of demonstrating the utility of his patent, arranged with a private corporation to have a jetty built in accordance therewith. Before the jetty was completed the company transferred all its interest therein to the government of the United States. Complainant subsequently arranged with the government contractor to complete the jetty in accordance with his design. The government engineers have now convinced Congress that the jetty as constructed will not do the work for which it was designed, and an appropriation has been made and a contract awarded for the construction of an auxiliary jetty and a modification of the one already constructed.

It is clear that the complainant is not entitled to the relief sought. He is not seeking to restrain the further use of his patent, but is seeking to control by injunctive process property of the United States. The fact that the jetty was constructed in accordance with his patent did not prevent the title thereto from vesting in the United States. "Title in the thing manufactured does not give the right to use the patented invention; no more does the patent right in the invention give title in the thing made in violation of the patent." *Belknap* v. *Schild,* 161 U. S. 24, 40 L. ed. 604, 16 Sup. Ct. Rep. 443: The jetty, therefore, being the property of the United States, the case is ruled by *Belknap* v. *Schild,* and *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601, 48 L. ed. 1134, 24 Sup. Ct. Rep. 820. In these cases it was held that the court could not interfere with an object of property unless it had before it the person entitled to that property; and this proposition was held to extend to an injunction against the use of the property. Here complainant asks that the officers and agents of the United States, through whom alone it acts, be restrained from interfering with a government jetty, because, as complainant contends, the terms of the contract or understanding with him have been departed from. Assuming that the United States has violated the terms of its contract, and has not given the jetty a sufficient length of time

in which to demonstrate its utility, that does not alter the fact that the jetty belongs to the United States, and that an injunction prohibiting interference with it would directly affect the United States. This is only another way of stating that the United States is necessarily a party to this suit, and that for this reason the suit must fail.

In *Fried. Krupp Aktiengesellschaft* v. *Crozier,* present term, [*ante,* 1] the government had no legal interest whatever in the patent infringed; hence its officers and agents in committing the acts of infringement were mere trespassers upon the rights of the patentee, and their relation to the government in no way protected them from the staying hand of the court. The mere fact that the wrongful acts of its officers and agents inured to its benefit did not clothe the government with such an interest as to entitle it to be heard. In other words, it was not a necessary party to the suit.

It is clear in the present case that the court was without jurisdiction in the premises, and that, therefore, the decree must be affirmed with costs. *Affirmed.*