**BERGER v. OHLSON et al.**

No. A-1053.

District Court of Alaska. Third Division. Anchorage.

Oct. 3, 1938.

W.N. Cuddy, of Anchorage, for plaintiff.

J. W. Kehoe, U. S. Atty., of Seward, for defendants.

HELLENTHAL, District Judge.

The demurrer which is before the Court for consideration, is as follows:

I.   That the Court has no jurisdiction of the person of either defendant herein nor of the subject of the action.

II.   That the above named plaintiff has no legal capacity to sue.

III.   That there is a defect of parties defendant.

IV.   That the complaint does not state facts sufficient to constitute a cause of action.

At the hearing and in the briefs, it is urged that the defendants are sued as officers of the United States and not in their individual capacity, that the United States is the real party in interest, and that it is in fact a suit against the United States and that since the United States cannot be made a party, the demurrer should be sustained.

The complaint, in this case, is brought by the plaintiff, Heinie Berger, against the defendant O. F. Ohlson, individually and as general manager of the Alaska Railroad and against J. T. Cunningham, individually, and as acting general manager of the Alaska Railroad.   The complaint is for an injunction against the defendants to enjoin a continuing tort.

In the complaint, the plaintiff alleges, together with other allegations not material to this hearing, that he is a citizen of the United States; the owner of real property in, and a taxpayer of the City of Anchorage, Alaska; that the defendants are, respectively, the general manager and acting general manager of the Alaska Railroad; that a freighter arrived at Anchorage, Alaska, loaded in part with building materials for the construction of a school house; the construction of which building is a project of the United States of America and partially financed by it; that plaintiff is under contract with the charterers of said vessel to lighter said cargo to a dock, known as the City Dock, at Anchorage, Alaska, and that in order to continue said lightering of cargo, it is necessary that the plaintiff have unobstructed passage to and from said City Dock over a roadway leading thereto; that said roadway is a public roadway, established prior to the establishment of the Alaska Railroad and the use thereof has continued adversely and uninterruptedly; that dedication of said roadway has been accepted by the public and that the same has been maintained all of the time by the City of Anchorage; that the dock, known as the City Dock in Anchorage, Alaska, is a public dock and is not the property of the Alaska Railroad and was built and maintained by the City of Anchorage and that neither the defendants nor the Alaska Railroad has ever exercised any control or supervision thereof until the commission of the acts complained of.

That on the 25th day of May, 1938, the employees of the Alaska Railroad, acting under the control and supervision of the defendants, in violation of law and the rights of the plaintiff and the citizens of the City of Anchorage, wilfully, maliciously and without justification, did obstruct said roadway leading to and from said City Dock, by switching railroad cars across said roadway and allowing same to remain standing thereon; that the defendants, claiming to act on behalf of the Alaska Railroad, demanded that the plaintiff pay wharfage for use of said City Dock

and the ground adjacent thereto; that subsequently and on or about the 27th day of May, 1938, the employees of the Alaska Railroad, acting under the supervision and control of the defendants, interfered with the removal of cargo from said City Dock so that the plaintiff was unable to continue lightering cargo; that unless the defendants are restrained and enjoined from obstructing said roadway and from interfering with the removal of cargo from said City Dock, they and their subordinates will continue to interfere with said removal, to the irreparable damage of the plaintiff and the public and that the plaintiff has no plain, speedy and adequate remedy at law.

The plaintiff, at the argument and in his brief, contends that this case is not against the United States and that it is properly brought against the defendants, officers of the United States, for torts perpetrated by them under the apparent authority of the United States, but beyond any authority given to them, and that the case of the United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, should govern the Court's action in this case. While on the other hand, the defendants contend that the United States is a necessary party; that the suit is in fact against the United States and that the Court should be governed, in its decision, by the case of Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599.

Many cases have been cited and referred to. The case of Belknap v. Schild, supra was brought to prevent the use of a caisson gate in a dry dock of the United States, contrary to the rights of the plaintiff. The case was heard on pleas setting up that the caisson gate was made and used by the United States for public purposes, and was the property of the United States. The pleas were held bad as answers to the whole bill, because the bill also sought damages and the defendants might be personally liable, but it was held that an injunction could not be granted, and the bill was dismissed without prejudice to an action at law. Vavasseur v. Krupp, 9 Ch.D. 351, was cited for the proposi-

tion which was made the turning point of the case, that the court could not interfere with an object of property unless it had before it the person entitled to the thing, and this proposition was held to extend to an injunction against the use of the thing, International Postal Supply Co. v. Bruce, 194 U.S. 601, 607, 24 S.Ct. 820, 48 L.Ed. 1134, that title to the caisson gate was admitted to be in the United States, therefore the United States was a necessary party to the suit, which was intended to deprive it of the incident of title, the right to use the gate. As the United States could not be made a party, the suit failed. In the case of International Postal Supply Co. v. Bruce, supra, it was held that although the United States was not the owner of the machines, but was a lessee in possession for a term which had not expired, it had a property, a right in rem, in the machines, which, though less extensive than absolute ownership, had the same incident, a right to use them while it lasted. That this right cannot be interfered with behind its back, and, as it cannot be made a party, this suit, like that of Belknap v. Schild, supra, must fail.

Applying these principles to the case at bar, we find that the complaint alleges that both the dock and the roadway in question belong to the public or the City of Anchorage and not to the Alaska Railroad. These allegations for the purpose of this hearing must be taken as true. The defendants, however, contend that since the Alaska Railroad, an instrumentality of the Government, is the owner of a right of way, the Court has no jurisdiction to determine the respective rights without the Government being made a party, and since the Government cannot be made a party, the demurrer should be sustained. The complaint, however, alleges that this roadway existed prior to the establishment of the Alaska Railroad.

Section 932, Title 43, of the United States Code 43 U.S. C.A. § 932: "Right of way for highways. The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

■■ Regarding the case of Estes Park Toll-Road v. Edwards, the right given under this statute is not a right given by prescription, the grant severs the land from the public domain. Estes Park Toll-Road v. Edwards, 3 Colo. App. 74, 32 P. 549, 550. In this case it is held, "After entry and appropriation of the right of way granted [under the provisions of this section] and the proper designation of it, the way so appropriated ceased to be a portion of the public domain."

Under this section a highway grant may be accepted by the public without acceptance by the public authorities and continued use of the road under circumstances clearly indicating an intention to accept is sufficient. Hatch Bros. Co. v. Black, 25 Wyo. 109, 165 P. 518.

■ If this roadway was established, as alleged, it was established under a statute of the United States and it is alleged in the complaint it was established before the Alaska Railroad, which we understand, although it is not alleged in the complaint was granted a right of way. The result is that we have two easements, both granted under the authority of the United States Government, the one gives the right to the public or the City of Anchorage to maintain a road, and the other gives a right of way to the Alaska Railroad, a Government agency, to maintain a railroad over the road. Each of these rights is in the nature of an easement and both can exist concurrently. Neither one of these rights is a right that can be used to the detriment of the other.

It is urged by the attorney for the defendants, that the Railroad is where it has a right to be, that to question the motive of a switcher, when that switcher is the United States, is to begin to interfere with the functions of the Government, the operation of its railroad on its own track. That the plaintiff attempts to do this in this case; that he virtually says that the United States may not operate its railroad so as to interfere with the use of a road acquired by user against the United States. It is contended that the ac-

tion is to enjoin the officers of the Alaska Railroad from spotting cars on the track of the Alaska Railroad, which is the property of the United States, and contends that the Court does not have jurisdiction to question the discriminatory acts of the officers of the Alaska Railroad, and thus virtually control the operations of that instrumentality of the executive branch of the United States Government.

The Court is of the opinion that the ownership of the right of way of the Alaska Railroad differs from the ownership of the caisson gate and the machines hereinbefore referred to, in this, that the ownership of the gate and of the right to use the machines is an absolute, unqualified ownership, while the ownership of a right of way is a qualified right which must be used and exercised in connection with the rights and privileges granted to the public. 22 Ruling Case Law, page 862, Sec. 113: "The nature of railway service requires exclusive occupancy. And it is well settled that a railroad company is entitled to the uninterrupted and exclusive possession and occupancy of its tracks and all of its right of way necessary for conducting its business, except when built on the public highway or over public crossings. * * *"

51 C.J. page 596, sec. 264: "Mutuality of Rights of Company and Public in General. Unless an exclusive right is granted to the railroad company by or under the authority of the legislature, in clear and explicit terms or by necessary implication, the right given to a railway company to lay down and use tracks in a street or highway is not exclusive, but, as a general rule, is merely the right to use the street or highway on equal terms with, and subject to, the general public's right to occupy and use the same; and the rights of each therein must be exercised with due regard to the rights and nature of the use of the other. * * *"

Atchison, T. & S. F. Ry. Co. v. General Electric Ry. Co., 7 Cir., 112 F. 689, 691: "The appellant has a great railway system extending between Chicago and the Pacific Coast, with valuable terminals in Chicago held under leases,

but its right to maintain this bill must be tested by its property interests in the crossing at Dearborn street, and not by the mere vicinity of its important interests and connecting tracks. * * * " And continues:

"It is equally well settled by the uniform line of decisions in the same state that the use of a street by a steam railway is legitimate when duly authorized, but that no exclusive use is conferred by the permit, and it can 'only be enjoyed in common with the use of the avenue by the public as an ordinary highway, and without materially impairing its usefulness as such.' * * *

"With the rights of the appellant in this street crossing thus defined, they are in subordination to the use for street purposes, which includes use for a street railway. The right is held in common, is 'joint and mutual, not exclusive' * * * ; and the primary object of the street is for ordinary passage and travel, of which the public and individuals cannot rightfully be deprived * * *."

It is probable that neither the Alaska Railroad nor any of its officials will claim any right in conflict with the rights claimed by the public in the roadway hereinbefore referred to. The Court cannot anticipate such a claim. If, however, such a claim is made, it will not affect the jurisdiction of the Court to determine the various rights.

In United States v. Lee, 106 U.S. 196, 215, 1 S.Ct. 240, 256, 27 L.Ed. 171, the court cites with approval the case of Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204, as follows: " 'Where the state is concerned, the state should be made a party, if it can be done. That it cannot be done is a sufficient reason for the omission to do it, and the court may proceed to decree against the officers of the state in all respects as if the state were a party to the record. In deciding who are parties to the suit, the court will not look beyond the record. Making a state officer a party does not make the state a party, although her law may have prompted his action, and the state may stand behind him as a real party in interest. A state can be made a party only

by shaping the bill expressly with that view, as where in-
dividuals or corporations are intended to be put in that re-
lation to the case.' " And after considering many cases,
on pages 217 and 218 of 106 U.S., on page 258 of 1 S.Ct.,
27 L.Ed. 171 holds:

"The fact that the property which is the subject of this
controversy is devoted to public uses, is strongly urged as
a reason why those who are so using it under the authority
of the United States shall not be sued for its possession even
by one who proves a clear title to that possession. In this
connection many cases of imaginary evils have been sug-
gested, if the contrary doctrine should prevail. Among
these are a supposed seizure of vessels of war, invasions of
forts and arsenals of the United States. Hypothetical cases
of great evils may be suggested by a particularly fruitful im-
agination in regard to almost every law upon which depend
the rights of the individual or of the government, and if the
existence of laws is to depend upon their capacity to with-
stand such criticism, the whole fabric of the law must fail.
\*   \*   \*

"If this constitutional provision is a sufficient authority
for the court to interfere to rescue a prisoner from the
hands of those holding him under the asserted authority of
the government, what reason is there that the same courts
shall not give remedy to the citizen whose property has been
seized without due process of law and devoted to public use
without just compensation?"

The case of Ickes v. Fox, 300 U.S. 82, 96, 57 S.Ct. 412,
81 L.Ed. 525, involved the ownership of water rights and
the court was not ousted of jurisdiction because it had to de-
termine the rights of an individual as against the rights
of the United States. Likewise, a case recently decided in
the District Court for the Territory of Alaska, Fourth Divi-
sion, Robert A. Clark, Jr., v. Ike P. Taylor and Fred Spach,
in which case the right of the Government to build a road
over an unpatented mining claim was determined. The con-
tention of the defendants being that since title to this claim

was still in the United States that as officers of the United States, President and Agent of the Alaska Road Commission, connected with the Department of the Interior, they had a right to occupy it. The Court held that it had jurisdiction and issued an injunction restraining the defendants from occupying the ground covered by the mining claim.

■ In any event, the Court is of the opinion that this Court has jurisdiction to restrain the defendants, either acting as individuals or acting apparently as agents of the United States, from wilfully, maliciously and without justification, obstructing said roadway.

For the reasons stated, the Court is of the opinion that as far as this Demurrer is concerned, the case of United States v. Lee should control and that the Demurrer should be overruled.

The plaintiff's attorneys may prepare an order, overruling the Demurrer, giving the defendants thirty days in which to answer.