AINSWORTH, Commandant Fifth Naval District, v. BARN BALLROOM CO., Inc.

No. 5502.

Circuit Court of Appeals, Fourth Circuit.
July 27, 1946.

J. Francis Hayden, Sp. Asst. to Atty. Gen. (John F. Sonnett, Asst. Atty. Gen., Harry H. Holt, Jr., U. S. Atty., and Walkley E. Johnson, Asst. U. S. Atty., both of Norfolk, Va., and Edward H. Hickey, Sp. Asst. to Atty. Gen., on the brief), for appellants.

Ben Jacobs and A. L. Bivins, both of Newport News, Va., for appellee.

Before GRONER, Chief Justice, United States Court of Appeals for the District of Columbia, DOBIE, Circuit Judge, and CHESNUT, District Judge.

GRONER, C. J.

This is an appeal by Rear Admiral Ainsworth, Commandant of the Fifth Naval District,[1] and Brigadier General Tilton, Commanding Officer at Fortress Monroe (Virginia), from an order of the District Court granting a preliminary injunction restraining them and their subordinates from enforcing an official order or regulation issued by them on or about February 11, 1946, declaring the premises used by appellee as a public dance hall and located in Newport News, "off limits" or "out of bounds" to enlisted personnel under their respective commands. The regulation provided—

"Effective immediately the subject-named establishments are placed out-of-bounds to service personnel until further notice. This restriction is made due to unsanitary and immoral conditions existing in the establishments." (Appellee's place was fourth on the list.)

The injunction order in turn provided that—

" * * * the defendants, their agents, representatives, subordinates and all others acting by or under their authority be, and they hereby are, restrained and enjoined, pending the determination of this action, from enforcing the order issued on or about February 11, 1946, declaring the premises occupied by the plaintiff at No. 2611 Washington Avenue, Newport News, Virginia, 'off limits,' or 'out of bounds' to enlisted personnel under their command."

---

[1] Which includes the greater part of Virginia, North Carolina, West Virginia and also parts of Maryland.

And in the court's conclusions of law the breadth of the order was defined in these words:

"Such temporary injunction should not be limited in its terms to enjoin merely the placing of guards at the premises but should be directed at the enforcement of the order in its entirety."

The facts alleged in appellee's (amended) complaint, in substance, are that it is a Virginia corporation, conducting a restaurant and dance hall in Newport News, Virginia, in a lawful manner and without disorder, and that it has never dispensed alcoholic beverages; that being informed that the Provost Marshal at Fortress Monroe was about to institute proceedings to have military police stationed in front of its premises to prevent military personnel from entering, it inquired what the grounds were upon which such action was to be based, but was given no information; that on February 14, 1946, a Provost Marshal came to appellee's place with a Navy shore patrol officer and read to appellee's president an order declaring the premises "off limits;" that the next day military police were stationed ·in front of the premises, as a result of which civilian personnel refused to enter, to the total loss of plaintiff's investment of $20,000.

Appellee charged that appellants' acts in the respects mentioned were without color of legal right, and prayed that the court enjoin the Admiral and the General from interfering with its business and for other relief.

Appellants filed three motions to dismiss, one, because the suit was in substance an action against the United States; two, because the Secretary of War and Secretary of Navy were indispensable parties and had not been served; and three, that the court was without jurisdiction to interfere with actions of the Executive done pursuant to law.

There was a hearing and thereafter the motions to dismiss were denied, and the court issued the injunction order from which the appeal is taken. Motion to suspend was denied, and the present appeal followed.[2]

The District Judge in a verbal opinion stated·in substance that defendants having introduced no evidence bearing upon the necessity or propriety of the out of bounds order, and the plaintiff having shown that the dance hall was lawfully operated, defendants' action in proscribing its use by military personnel amounted to a deprivation of appellee's right to do business, causing it irreparable loss and depriving it of its property without due process of law.

In support of their motion to dismiss, appellants introduced in evidence copies of War Department Circular 367, dated September 9, 1944, War Department Circular 134, dated May 4, 1945, and Court Martial Order No. 1 of 1942 of the Navy Department, especially the provisions appearing on page 135, as the pertinent regulation under which defendants acted in declaring the place out of bounds.

These rules and orders show that a joint Army-Navy Disciplinary Control Board, embracing the Newport News area, was established under an agreement between the Secretary of War and the Secretary of the Navy, with the power and duty of recommending places or areas to be designated as out of bounds to military personnel, and the appropriate commanders in the areas involved were directed by the respective Secretaries to take the necessary action to carry out the recommendations. The order in question resulted from this joint agreement.

As to all of this the District Court held that the question whether the Board in its action had overstepped its jurisdiction was a judicial question which the court had the right to examine into, and upon such a finding by the court, that the local military commanders were the proper parties defendant.

We think this assumed too much, for it must be remembered that the sum of the complaint is no more than that as an incident of defendants' order prohibiting the use of the dance hall by enlisted men, civilian patrons "refused to enter" the place. This is very far from charging an unlawful trespass or invasion of appellee's property, as was the case in Philadelphia

---

[2] 28 U.S.C.A. § 227.

Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570, but is rather a challenge of the official discretion of appellants in the exercise of authority over the Army and Naval personnel under their respective commands. If the order was within the discretionary authority of the heads of the War and Navy Departments, duly delegated to appellants, the consequential damage which followed the making and enforcing of the order clearly would not create a justiciable controversy. This is so, even if it be conceded there was an abuse of discretion. And as has been pointed out time and again, the courts may not invade the executive departments to correct alleged mistakes arising out of abuse of discretion. For to do so would interfere with the performance of governmental functions and vitally affect the interests of the United States. See, for example, Dakota C. Tel. Co. v. South Dakota, 250 U.S. 163, 184, 39 S.Ct. 507, 509, 63 L.Ed. 910, 4 A.L.R. 1623, where the Supreme Court said:

" * * * as the contention at best concerns not a want of power, but a mere excess or abuse of discretion in exerting a power given, it is clear that it involves considerations which are beyond the reach of judicial power. This must be since, as this court has often pointed out, the judicial may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion."

 And we think it cannot be questioned here that the Secretaries of War and Navy, respectively, subject to the approval of the President, were authorized to make and publish regulations for the government of the Army[3] and Navy,[4] of which the order in this case is a fair sample. Here the trial court found as a fact that a joint Army-Navy Disciplinary Control Board was established under an August 29, 1944 agreement between the Secretaries. One of its functions was, as we have seen, to recommend designated places or areas as out of bounds to military personnel, and the agreement provided that such recommendations should be made at the discretion of the Board, with or without previous warning to the proprietors of places which might be incidentally affected. And the order further required that commanding officers in the various locations should take the necessary action to carry out its provisions. It is accordingly apparent that the authority under which appellants acted was derived directly from heads of the respective departments as the representatives of the President, as a result of which it seems to us clear that in the present suit they acted, not as individuals, but as representatives of the Government, in the exercise of a delegated discretion reposed by Congress in the Executive Department. In this view it is apparent to us that the case is one in substance against the United States, and as the United States has not consented to be sued, the bill should have been dismissed. The rule in that respect was first pronounced by the Supreme Court in the Eliason case[5] more than a hundred years ago, where it was said:

" * * * The Secretary of War is the regular constitutional organ of the President, for the administration of the military establishment of the nation; and rules and orders publicly promulgated through him must be received as the acts of the executive, and as such, be binding upon all within the sphere of his legal and constitutional authority. Such regulations cannot be questioned or denied because they may be thought unwise or mistaken."

And the rule was reaffirmed by the Supreme Court in the Standard Oil case[6] within the last five years.

The question is not new and, under a state of facts substantially like those we have here, was decided by this court in favor of the view we now take.[7] In that case Congress had appropriated a sufficient sum of money for the erection and equipment of a depot for the storage of high explosives. The President designated the site of the depot and title was acquired in the usual way. Whereupon explosives were stored there, and it was intended to store

---

3 Act March 1, 1875, 18 Stat. 337.

4 34 U.S.C.A. § 591.

5 United States v. Eliason, 16 Pet. 291, 10 L.Ed. 968.

6 Standard Oil Co. v. Johnson, 316 U. S. 481–4, 62 S.Ct. 1168, 86 L.Ed. 1611.

7 Ferris v. Wilbur, 4 Cir., 27 F.2d 262.

additional quantities, sufficient to blow up the entire county in which the depot was located. Property owners in the neighborhood brought suit against the Secretary of the Navy and the Naval officer in charge of the depot to prevent the further storage of explosives, alleging that such storage so depreciated the value of their property as to constitute a taking without due process of law, in violation of the Fifth Amendment. The District Court dismissed the bill and on appeal the dismissal was affirmed. Judge Parker, speaking for the court, said [27 F.2d 263]:

"Now defendant Miles, in storing and preparing to store explosives on the Naval Mine Depot, is admittedly acting under the direction of the Secretary of the Navy, who represents the President. In suing to restrain him, therefore, complainants are suing the authorized representative of the government, and are asking that he be restrained from carrying out on government property a policy determined upon by the Executive Department in the exercise of a discretion reposed in it by Congress. It is manifestly, then, not a suit to restrain unauthorized action by a government official, or action based upon an unconstitutional statute, but a suit to restrain action in which the official is exercising valid governmental authority by virtue of his office. There can be no doubt that such a suit is in essence a suit against the United States, and that the United States is a necessary party thereto. And, as it has not consented to be made a party, the suit must fail."

Stated in its simplest terms, the rule by which courts are controlled in situations analogous to those obtaining here is that where the defendant-official is engaged in something which the law authorizes him to do, or, is acting pursuant to valid authority validly conferred, the suit will be held to be against the United States. But where the authority to do the particular act had not been conferred, or constitutional power to confer it is lacking, the suit is not subject to the objection that it is against the United States.

A few of the leading cases illustrative of the application of the rule are collected in the footnote below.[8]

Enough has been said, we think, to show that the President, acting through the Secretaries of War and Navy, had power to regulate and control the military establishments; that appellants' order was restricted to military personnel; that it did not by its terms deprive appellee of the right to maintain its dance hall, or prevent its civilian customers from patronizing it. And if, in consequence, appellee's business sustained a loss, it was neither a "taking" of appellee's property, nor a trespass, nor an unwarrantable interference, and consequently is not an order for which damages will accrue against the individuals named. Since, therefore, the making of the regulation order was the exercise of authority conferred by law, it follows that this proceeding to annul it is a suit against the United States. See: Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599; United States ex rel. Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191; International Postal S. Co. v. Bruce, 194 U.S. 601, 24 S.Ct. 820, 48 L.Ed. 1134; Jones v. Tower Prod. Co., 10 Cir., 120 F.2d 779; Transcontinental & W. Air Line v. Farley, 2 Cir., 71 F.2d 288; International Trading v. Edison, 71 App.D.C. 210, 109 F.2d 825; and see also Louisiana v. McAdoo, Wells v. Roper and Morrison v. Work, supra.

What has just been said disposes of the case and requires us to reverse the order of the District Court. But we are also of opinion that the suit could not otherwise be maintained in the failure to name the Secretaries of War and Navy as defendants and to procure service of process upon them. See: Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Nat. Conf. on Legalizing Lotteries v. Goldman, 2 Cir., 85 F.2d 66; and Neher v. Harwood, 9 Cir., 128 F.2d 846, 158 A.L.R. 1116.

Reversed.

---

[8] Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; Morrison v. Work, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394; and Wells v. Roper, 246 U. S. 335, 38 S.Ct. 317, 62 L.Ed. 755.