UNITED STATES v. WARFIELD et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit. March 13, 1909.)

Nos. 792, 793.

POST OFFICE (§ 7*)—POSTMASTERS—LIABILITY ON BONDS.

A postmaster who, under instructions from the First Assistant Postmaster General, given him under authority conferred by Rev. St. § 396 (U. S. Comp. St. 1901, p. 224), on the Postmaster General, and by the rules and regulations of the department delegated to the first assistant, appointed a clerk and paid his salary from month to month from money of the government in his hands, receiving proper vouchers therefor, is not liable to the United States for the amounts so paid out on his bond, conditioned that he would "faithfully discharge all of the duties and trusts imposed upon him either by law or the rules and regulations of the Post Office Department of the United States," although such clerk was not employed in his office, where he followed the instructions of his superior officer in good faith, without any knowledge of the place or nature of the clerk's employment, and in the supposition that he was employed in the postal service, probably as a special or secret agent.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 7.*]

In Error to the Circuit Court of the United States for the District of Maryland, at Baltimore.

The defendant in error Solomon Davies Warfield was appointed Postmaster by President Cleveland on May 9, 1894, and reappointed by President McKinley on May 6, 1899. He gave two bonds. The first was dated May 16, 1894, with the Fidelity & Deposit Company of Maryland and Edwin Warfield as sureties. The second was dated March 10, 1899, with the Fidelity & Deposit Company of Maryland, Edwin Warfield, and Henry A. Parr, as sureties. The suit below was on the bonds thus executed. Two suits were instituted, one on each bond, but they were consolidated by agreement.

The condition of each bond was as follows:

"Now, the condition of this obligation is such, that if the said S. Davies Warfield shall faithfully discharge all the duties and trusts imposed upon him, either by law or the rules and regulations of the Post Office Department of the United States, and shall perform all of the duties and obligations imposed upon and required of him by law or the rules and regulations of the said department, in connection with the money order business, then this obligation to be void; otherwise of force."

The condition of the bonds alleged to have been violated reads as follows:

"That if the said S. Davies Warfield shall faithfully discharge all of the duties and trusts imposed upon him, either by law or the rules and regulations of the Post Office Department of the United States * * * then the above obligation to be void; otherwise of force."

One of the duties imposed upon the defendant in error as postmaster was the proper disbursement of funds placed in his hands by the government. The substance of the allegation is that the defendant in error, as postmaster, paid a salary for a certain time to one John W. Pettit, to wit, a salary of $600 per annum to him as clerk from July 19, 1898, to September 22, 1899, and $1,500 to him as bookkeeper from September 22, 1899, to September 10, 1903, although no work was done by Pettit in the Baltimore Post Office for such salary.

It appears: That John W. Pettit was placed upon the eligible list by the defendant in error as postmaster under the direction of the Post Office Department, and afterwards was appointed to a clerkship under the civil service law also by the direction of the Post Office Department at Washington. That the appointee was assigned to duties outside of the post office at Baltimore, and the defendant in error was required by the department to pay out of the funds in his hands the salary of the appointee, which was regulated also by the Post Office Department. That the defendant in error used the blanks which were required by the Post Office Department and entered the certificate which was necessary in order to make the payments to the appointee regular, etc.

John C. Rose, U. S. Atty., and Morris A. Soper, Asst. U. S. Atty.

Edgar H. Gans and N. P. Bond (W. Irvine Cross, on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). This case comes before us on a writ of error to the court below. The plaintiff below instituted an action to recover a certain sum claimed to be due by the defendant below S. Davies Warfield on account of certain money placed in his hands as postmaster at Baltimore, and which it is alleged was paid to one John W. Pettit without warrant of law.

It appears that the vouchers taken by the defendant in error at the time the disbursements were made by him were signed by the clerk, and that in pursuance of the same the money was actually paid to the clerk in each instance. The said clerk had been appointed on the authority of the First Assistant Postmaster General, who also made an allowance to the defendant in error for the payment of such sums to said clerk out of the moneys appropriated by Congress for the support of the Post Office Department with which to pay said clerk. The defendant in error, as his bond required, was simply discharging his duty in the manner he was advised it was proper for him to do by his superior officer, and was obeying the regulations of the Post Office Department as his bond required him to do. There is no claim that the defendant in error fraudulently colluded with others to defraud the plaintiff, or that there was any conspiracy the object of which was

to secure the payment of said sums to the clerk mentioned. Every dollar of the amount sought to be recovered was paid out, not simply with the knowledge, but by the direction, of the Post Office Department.

Section 388 of the Revised Statutes (U. S. Comp. St. 1901, p. 218), among other things, provides that:

"There shall be at the seat of government an Executive Department to be known as the Post Office Department, and a Postmaster General, who shall be the head thereof. * * * "

Section 396 (U. S. Comp. St. 1901, p. 224) provides that:

"It shall be the duty of the Postmaster General: First. To establish and discontinue post offices. Second. To instruct all persons in the postal service with reference to their duties. * * * Seventh. To superintend the disposal of the moneys of the department. * * * "

While these duties are imposed upon the Postmaster General, he does not, as a matter of course, perform all such duties personally. He is authorized by law to appoint assistants, and these assistants are designated by him as chiefs of the several branches of the postal service subject only to the supervision and direction of the Postmaster General, and by them the duties assigned are performed. However, their acts are the acts of the Postmaster General when confined within the scope of the duties assigned to them by their chief. Parish v. U. S., 100 U. S. 504, 25 L. Ed. 763.

Among other things, the Postmaster General as the head of the Post Office Department promulgates certain rules known as "postal regulations." Postmasters are controlled by the Postmaster General in accordance with these regulations and are instructed with reference to their duties through the First Assistant Postmaster General. It is provided by the postal rules and regulations with respect to the duties of the First Assistant Postmaster General as follows:

"To this office is assigned the general care of postoffices and postmasters and their instructions. The adjustment of salaries of presidential postmaster and the consideration of allowances for clerical hire, rent, fuel, light, furniture and miscellaneous expenditures."

It should be borne in mind that the bond declared upon by the United States in this case, among other things, contains a condition to the effect that the obligor shall faithfully perform all the duties imposed upon him by the rules and regulations to which we have just referred. Therefore the defendant in error, being a subordinate of the Post Office Department, was by the condition of the bond required to obey the instructions and directions issued by his superiors.

The learned judge who tried this case below, in discussing this phase of the question, said:

"But the numerous reported cases in which this law has been enforced as against parties receiving money illegally paid by a public officer do not cover a case in which innocently and in good faith a disbursing agent, upon an apparently lawful claim and by direction of his superior officer charged with the duty of instructing him, makes a payment in good faith, out of moneys in his hands which should properly and legally be applied to the payment of the claim if it had no concealed element of illegality. I have not found a reported case in which an innocent disbursing agent has been held liable under such cir-

cumstances. It hardly seems that the financial operations of the government could go on if at the peril of refunding the money every subordinate was required to exercise his own judgment as to whether an apparently legal claim which his superior directed him to pay was to be paid or not. That the person wrongfully obtaining the money should be liable to refund to the government, no matter by what innocent mistake of law or fact he obtained it, is well settled as one of the risks of dealing with the government. * * * But it would seem that the position of an innocent agent who by direction disburses the government's money should be different, and the responsibility, so far as liability for the disbursement is concerned, should rest where the responsibility to decide is placed by the rules and regulations established by law."

This is an admirable statement of the law pertaining to this controversy, and is supported by numerous authorities, among others being the case of United States v. Sinnott (C. C.) 26 Fed. 86, in which the court said:

"And even if the disposition of the money received from the sale of lumber was a technical violation of section 3617 or 3618 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2413, 2414), there is no pretense but that the defendant acted in good faith, and the Indians to whom the money really belonged had the benefit of it, and therefore, upon any equitable view of the transaction, he is entitled to be credited with the amount."

In the case at bar, although the appointee did not work in the post office at Baltimore, yet the whole transaction having been under the authority of the Post Office Department and by its direction, and the money having been paid out and honestly accounted for by the defendant in error, he should not be held liable to the government, although it should appear that appointee was not so engaged in the office at Baltimore, or if, indeed, it be a fact, as alleged, that he was not engaged in government work at all.

Among other things, an issue was submitted to the jury as to whether the defendant in error acted innocently and in good faith and in reliance upon the instructions received from the Post Office Department in the payment of the sums to which reference has heretofore been made. In response to this issue the jury found that the defendant in error innocently and in good faith, and in reliance upon the letters of July 14, 1898, and of September 20, 1899, really believed that Pettit was performing postal services in some capacity not in the Baltimore office. Thus it will be seen that the defendant in error at all times acted strictly in accordance with the instructions received from his superior officer. It was as much his duty to obey those instructions coming from the Post Office Department as it was to obey any other instructions or regulations emanating from that branch of the government service.

It is insisted by counsel for the plaintiff in error that the conduct of the post office officials was improper. This may be true, but nevertheless, under the law, the Postmaster General, and the first assistant, acting under his directions, were charged with the administration of the laws pertaining to that department, and it was in obedience to the mandate of the First Assistant Postmaster General that the defendant in error, acting as the disbursing officer of the government for the Post Office Department, disbursed the funds in his hands strictly in accordance with the directions of his superior officer. Therefore

the alleged misconduct of the officials in the Post Office Department can have no bearing on the questions involved in this controversy.

It is insisted that the defendant in error should have disobeyed the orders of the officials of the Post Office Department. Such conduct on the part of a subordinate would result in demoralization in the management of the affairs of the department, and, in this instance, would have subjected such official to removal from office for insubordination.

Since the argument of this case our attention has been called to the case of the United States v. Arthur R. Moore (decided by the Circuit Court of Appeals for the Second Circuit) 168 Fed. 36. We have carefully considered the facts of that case and are of opinion that the ruling announced therein does not apply to the case at bar. There it appears that the party carried on the pay roll of the postmaster was assigned duty in one of the departments at Washington, and this was expressly prohibited by Act Cong. March 15, 1898, c. 68, § 9, 30 Stat. 317 (U. S. Comp. St. 1901, p. 2630), which reads as follows:

"Sec. 9. Hereafter it shall not be lawful to detail clerks or other employés, paid from general appropriations for the postal service, from any branch of said postal service, whether located at the seat of Government or elsewhere, to any of the offices or bureaus of the Post Office Department at Washington."

It appears from the record that at the time Pettit was appointed the defendant in error had no definite knowledge that he was to be required to perform duties as a clerk in the department at Washington. We infer from the evidence that the chief of the salary and allowance division had agreed to arrange for the employment of Pettit, but nothing was said as to where or in what place in the postal service he was to be assigned to duty. It is true that the defendant in error afterwards said that he assumed that Pettit was engaged in the performance of duties at the department at Washington, yet a careful examination of the testimony of the defendant in error shows that he had no knowledge as to where Pettit was performing service. The defendant in error in his testimony in relation to this point, among other things, testified that:

"At the time of the original appointment of Pettit or the original pressure Hamlet was the chief inspector. The system is under surveillance at all times. You have the chief post office inspector who has charge of all the post offices in the field. He was the personal representative of the Postmaster General, and he either examined my office himself or had inspectors here. From the top they had places where they would look down on the clerks to see if they were performing their duties. The carriers had spotters out to look after the free delivery service, and witness did not know anything about it. This man might have been there on some secret work, and he was told he was not to come to the office. The chief inspector was present, and he urged witness to save Pettit's eligibility and to put Pettit on the rolls."

To require the defendant in error to refund the amounts paid out under the circumstances would be unconscionable. We are therefore of the opinion that the ruling of the lower court in this respect was proper.

We have carefully considered the questions of law raised by the declaration, pleas, demurrers, replications, and rejoiners; the result

being that we are in full accord with the rulings and instructions of the court below and do not deem it necessary to discuss them in detail.

For the reasons hereinbefore stated, the judgment of the lower court is affirmed.

Affirmed.