## CRANE et al. v. NICHOLS.

(District Court, S. D. Texas, at Houston. August 5, 1924.)

No. 224.

**1. Constitutional law 73—Courts should interfere with enforcement of fraud orders only in extreme cases.**

While the courts have power to restrain an unwarranted or arbitrary invasion of the rights of citizens to use the mails, they should interfere only in the extremest cases with the enforcement of fraud orders made by the Postmaster General, under authority conferred by Rev. St. § 3929, as amended (Comp. St. § 7411).

**2. Evidence 83(1)—Fraud order, signed by an Assistant Postmaster General, presumptively valid.**

A fraud order signed by an Assistant Postmaster General is presumptively valid, and can be impeached only by direct proof that his act was an usurpation of authority.

**3. Post office 26—Fraud order, signed by Assistant Postmaster General, held valid.**

A fraud order, signed by the Second Assistant Postmaster General, held valid, under Rev. St. §§ 177-179 (Comp. St. §§ 259-261), and an executive order thereunder relative to performance of duties of Postmaster General by Assistant Postmasters General.

In Equity. Suit by A. D. Crane and others against Roy Nichols. On motion for preliminary injunction. Denied.

Cody & Ulmer, for complainants.

H. J. Donnelly, Asst. Sol. Post Office Department, of Washington, D. C., and H. M. Holden, U. S. Dist. Atty., and Clarence Kendall, Sp. Asst. U. S. Atty., both of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is an application by A. D. Crane and others for an injunction against the postmaster to restrain him from putting into effect a fraud order, signed and issued by the Second Assistant Postmaster General. The matter coming on to be heard upon application for a temporary restraining order, the parties having agreed that pending a hearing all mail

covered by the order should be held in the post office and not returned to the sender, no hearing was had upon the application for temporary restraining order, but the matter was set for hearing upon the application for temporary injunction, and now stands before the court on that hearing.

It is conceded by the complainant that the statute authorizing the Postmaster General to issue fraud orders is valid, and that where there is any evidence to justify, upon any reasonable view, the action of the Postmaster General, his action is not subject to review. In short, complainant does not here ask the court to substitute its judgment for that of the Postmaster General, but contends, first, that there was no evidence adduced before the Postmaster General which would in law justify the order; and, second, that the statute conferring power upon the Postmaster General confers a power nondelegable, and that the order in this case, having been issued by the Second Assistant Postmaster General, is void upon its face.

[1] With reference to the first point, the insufficiency of the evidence upon which the action of the Assistant Postmaster General was taken, I have examined that evidence, and find that his action was amply justified. Further, I am of the opinion that, while the authority undoubtedly lies in the court to restrain an unwarranted, arbitrary invasion of the right of the citizens to use the postal establishment, which is the privilege of us all, the statute authorizing fraud orders was aimed at such a beneficent purpose that only in the extremest cases should courts interfere with their issuance.

The action of the government in instituting the vast series of fraud prosecutions which are now crowding the courts after the victims have been swindled, after the virus of speculation, under the passion of obtaining something for nothing, has, like an epidemic, swept the body politic, taking it through the stages of financial fever into the throes of financial exhaustion and to the verge of financial death, seems almost pitiful and futile, in the light of the fact that the government had in its possession a tremendous, a searching febrifuge, in the form of fraud orders in these cases which it ought long ago to have applied.

No one more than I believes in local self-government. No one more than I dreads government by bureaucracy. No one more than I resents the arbitrary and meddling action of the horde of government clerks centered in Washington, so removed both in dis-

tance and in point of view from the activities of the people they seek to supervise that they cannot understand, and are therefore prone to unreasonably interfere with them. In this matter, however, of the prevention by fraud order of the pollution of the mails which form the arteries and veins of our intercommunication, a central supervision is so essential that no one can justly object to or criticize it, because, while the seat of infection is local, the channels of the post through which it spreads are nation-wide, and if the Post Office Department would devote as much vigilance to checking in their inception these fraudulent schemes as to sweeping up the wrecks after the hurricane has passed, the post office establishment would continue to be, as it was designed, to all the people a blessing and not a curse.

I therefore approach the question of enjoining a fraud order with a mind bent on sustaining, rather than defeating, such an order, convinced as I am of the beneficial purpose of the act, and of the simplicity and essential justness of its operation. Upon the record in this case which was submitted to the Post Office Department as a basis for its action, I have no warrant for interfering with the action of the department, and if there is no merit in the position that the Postmaster General himself must issue the fraud order, the injunction must be denied.

This brings me to the question upon which the plaintiff pitched his argument; the important question that the Postmaster General has delegated his authority, which is nondelegable. It is not clear that the plaintiffs are contending that the Postmaster General must himself examine the evidence, and reach the conclusion upon such examination. There are some suggestions in their brief and argument to this effect. Certainly such a construction is unreasonable and unsound, and cannot be sustained.

The law creating the office of Postmaster General sets out the various activities confided to his care, and provision is made as follows: "There shall be at the seat of government an executive department to be known as the Post Office Department. A Postmaster General shall be the head thereof who shall be appointed by the President, by and with the consent of the Senate. There shall be in the Postoffice Department three Assistant Postmasters General who shall be appointed by the President by and with the consent of the Senate." The statutes also make provision for solicitors, and for clerks, employees, etc.

Compiled Statutes, § 582, Duties of the Postmaster General, provides as follows: "It shall be the duty of the Postmaster General: First. To establish and discontinue post-offices. Second. To instruct all persons in the postal service with reference to their duties. Third. To decide on the forms of all official papers. Fourth. To prescribe the manner of keeping and stating accounts. Fifth. To enforce the prompt rendition of returns relative to accounts. Sixth. To control, according to law, and subject to the settlement of the Sixth Auditor, all expenses incident to the service of the Department. Seventh. To superintend the disposal of the moneys of the Department. Eighth. To direct the manner in which balances shall be paid over; issue warrants to cover money into the Treasury; and to pay out the same. Ninth. To superintend generally the business of the Department, and execute all laws relative to the postal service."

That it was not intended that the Postmaster General should do all of these things himself is clear, and a vast department of employees and assistants have been assembled to do these things under his direction. It is held that the acts of the assistants, authorized by law to be appointed by the Postmaster General and designated by him as chiefs of the several branches of the postal service, are the acts of the Postmaster General, when confined within the scope of the duties assigned to them by him. U. S. v. Warfield, 170 Fed. 43, 95 C. C. A. 317, 24 L. R. A. (N. S.) 312, 17 Ann. Cas. 1186. McCollum v. United States, 17 Court of Claims, 92.

On the precise point of the right of the Postmaster General to rely upon subordinates for obtaining and presenting evidence and conducting hearings, and that proceedings taken by and hearings had before regularly designated employees of the department in connection with these fraud orders are the proceedings of the Postmaster General, see People's United States Bank v. Gilson (C. C.) 140 Fed. 1, in which it is held that a hearing before the Assistant Attorney General attached to the Postmaster General's office was a hearing before the Postmaster General, since, as the court says, "every one knows that the Postmaster General in person cannot attend to the innumerable duties of the department; * * * it appears from the bill that the bank was given a hearing before the Postmaster General, acting by the Assistant Attorney General;" that was sufficient.

In the very interesting and well-written case of Lewis Publishing Co. v. Wyman (C. C.) 152 Fed. 799, a case arising on the question of the right to classify mail matter, the court held that, though the statute provided the classification to be made by the Postmaster General, a hearing before the Third Assistant was sufficient, as the Postmaster General had the right to delegate to subordinates all the details of hearing the case.

Further, in the matter of hearings, either in the case of fraud orders or on the question of classification of mail matter, no particular formal hearing is necessary, and no particular person need conduct them. Smith v. Hitchcock, 226 U. S. 56, 33 Sup. Ct. 6, 57 L. Ed. 119. It therefore appears clear that the Postmaster General could delegate the matter of collecting evidence and reporting conclusions thereon to any person in any branch of his department, and when he makes his decision after such evidence has been collected it will be conclusively presumed that he considered the evidence and based his decision upon it.

Conceding this point, as to which complainant does not make a vigorous argument, they stand finally upon the proposition that whatever may be the rule as to the obligation of the Postmaster General in the matter of the delegation of preliminaries, the fraud order itself must, under the very terms of the statute, be executed by him, and its execution cannot be delegated to others. That this is a power of a grave and delicate nature, which requires the personal execution of him to whom it has been by statute given, so that the maxim, "delegatus non potest delegari," is applicable.

They say that the statute requires the Postmaster General to be satisfied from some kind of evidence that there is a scheme to defraud, and that in this case the Postmaster General had no connection with the matter whatsoever, and therefore could not have been satisfied. They say that, just as the Circuit Court of Appeals for the Fifth Circuit in Dunn v. United States, 238 Fed. 508, 151 C. C. A. 444, held that a statute directing a grand jury to be drawn by the clerk and jury commissioner could not be satisfied by a drawing by the deputy, so here a statute providing for the action of the Postmaster General cannot be satisfied by the action of one of his assistants.

To this contention and the cited cases there are two preliminary answers: (1) That the drawing of a jury has always been recognized as a delicate and important duty, to be discharged in the precise manner provided by law to prevent fraud and injury; (2) that the action of the Postmaster General in making a fraud order is no different from the action of the Postmaster General in classifying mail matter, or making other regulations or performing other duties, and it is uniformly held that all of these things can be done by assistants duly designated by him.

But, if this is not so, and this be conceded by the government to be an act which can be done only by the head of the Post Office Department, that concession will not avail the plaintiff, because the statutes of the United States have made provision for the discharge of the duties of the Postmaster General by deputy, such as they had not made for the discharge of the duties of the clerk by deputy clerk at the time of the Dunn decision, and such as is now made by the statutes since the Dunn decision.

It is now the law that a deputy clerk may do any act which his principal was authorized to do. It is now, and has been for years, the law that, in the event of the absence, death, resignation, etc., of the head of a department, an acting head may perform those duties. The statutes covering this matter are the following:

"Sec. 177. In case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the President, as provided by section one hundred and seventy-nine, perform the duties of such head until a successor is appointed, or such absence or sickness shall cease." Comp. St. § 259.

"Sec. 178. In case of the death, resignation, absence, or sickness of the chief of any bureau, or of any officer thereof, whose appointment is not vested in the head of the department, the assistant or deputy of such chief or of such officer, or if there be none, then the chief clerk of such bureau, shall, unless otherwise directed by the President, as provided by section one hundred and seventy-nine, perform the duties of such chief or of such officer until a successor is appointed or such absence or sickness shall cease." Comp. St. § 2600.

"Sec. 179. In any of the cases mentioned in the two preceding sections, except the death, resignation, absence, or sickness of the Attorney General, the President may, in his discretion, authorize and direct the head of any other department or any other officer in either department, whose appointment is vested in the President, by and with the ad-

vice and consent of the Senate, to perform the duties of the vacant office until a successor is appointed, or the sickness or absence of the incumbent shall cease." Comp. St.. § 261.

Under these provisions an executive order was issued by the President of the United States, as follows: "Pursuant to the authority conferred by section 179 of the Revised Statutes, the Second Assistant Postmaster General is authorized and directed to perform the duties of the Postmaster General whenever and so long as he and the First Assistant Postmaster General shall both be absent or sick; and the Third Assistant Postmaster General is authorized and directed to perform the duties of the Postmaster General whenever and so long as he and the First and Second Assistant Postmasters General shall be absent or sick; and the Fourth Assistant Postmaster General is authorized and directed to perform the duties of the Postmaster General whenever and so long as he and the First, Second and Third Assistant Postmasters General shall all be absent or sick."

[2] In view of these provisions, a fraud order signed by an Assistant Postmaster General, he being an officer whose appointment by and with the advice and consent of the Senate is by law vested in the President, would be presumptively valid in the absence of direct proof establishing that his act was an usurpation of authority. See Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 9 Sup. Ct. 168, 32 L. Ed. 538; Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531; Ex parte Tsuie Shee et al. (D. C.) 218 Fed. 256; In re Jcm Yuen (D. C.) 188 Fed. 350.

[3] In this case, however, it is not necessary to rest upon presumption. The plaintiff, taking the testimony of the Postmaster General, has established the fact indisputably before me that the condition did in fact exist which authorized the Second Assistant to act as the Postmaster General, ·and that he was, at the time of the making of the order, the Postmaster General de facto, if not de jure.

A review of the evidence and the law applicable to this case establishes that the duty and responsibility of issuing fraud orders was confided by Congress, not to individuals, but to the head of the Department of the Post Office. That provision was made by law for the appointment of three Assistant Postmasters General, these officers to be appointed by the President and confirmed by the Senate; that provision· was made for the conduct of an establishment of great magnitude, employing many men, the duties of which establishment could not be discharged, except by deputies. That provision was specifically made for the delegatiori of the authority of the Postmaster General to his assistants, and specific provision was made for the assumption by the Assistant Postmasters General under proper circumstances, of the duties of head of the department; that in this case, in pursuance of the regularly established practice and custom, a condition had arisen which made the action of the Second Assistant Postmaster General in lieu of the Postmaster General necessary; that evidence, and satisfactory evidence, was present as a basis for the action; that the order was duly and validly issued; and that it was the duty of the defendant Nichols to obey said order.

The court is of the opinion, and it is so ordered, that the injunction be denied, with costs, and that the postmaster be directed to proceed to obey and carry out the fraud order heretofore issued.