### UNITED STATES v. WAVERLY CLUB et al.

District Court, S. D. New York. November 2, 1927.

**1. Intoxicating liquors ⬤⇒272—Court's jurisdiction in suit to abate liquor nuisance could not be based on substituted service on theory suit was in rem (National Prohibition Act, tit. 2, §§ 22, 23 [27 USCA §§ 34, 35]).**

Jurisdiction of court in suit to abate liquor nuisance, under National Prohibition Act, tit. 2, §§ 22, 23 (27 USCA §§ 34, 35), could not be based on substituted service, on theory that suit was in rem against the premises, since there was no seizure of the res, and could be none until the facts alleged had been litigated and existence of a nuisance found.

**2. Process ⬤⇒71—When authorized by statute, court has power to subject defendant's person to its jurisdiction by substituted service strictly complying with statute.**

When authorized by statute, court has power to subject person of defendant to its jurisdiction without personal service of process on him, if he be present and domiciled within its territorial jurisdiction, if the statutory method of substituted service is strictly followed, and is of such a character as to constitute due process of law.

**3. Courts ⬤⇒344(5)—Rule authorizing substituted service at defendant's usual abode excludes other methods of substituted service, with certain exceptions (equity rule 13).**

Equity rule 13, authorizing substituted service by leaving a copy of subpœna at dwelling house or usual place of abode of defendant with some adult person who is a member of his family, excludes all other methods of substituted service, except where statute prescribes a different mode, and where bill is purely ancillary to another suit, in which case subpœna may be served on defendant's counsel.

**4. Courts ⬤⇒344(5)—Substituted service on defendant in liquor nuisance abatement suit by leaving copy of subpœna at defendant's place of business held invalid (equity rule 13; National Prohibition Act, tit. 2, §§ 22, 23 [27 USCA §§ 34, 35]).**

Under equity rule 13, in government suit to abate a liquor nuisance, under National Prohibition Act, tit. 2, §§ 22, 23, (27 USCA §§ 34, 35), service of process on defendant by leaving copy thereof at his place of business, under court order authorizing such service made on affidavits showing diligent, but futile, efforts to find defendant and to ascertain his place of residence within the district, did not give court ju-

risdiction of defendant, and the order for substituted service and the proposed service thereunder must be vacated.

**In Equity.** Suit by the United States against the Waverly Club and others. On motion of defendant James Collins, appearing specially, to vacate the service on him of the subpœna and bill of complaint under an order for substituted service, entered ex parte, and to vacate said order. Motion granted.

This is the usual suit to abate a liquor nuisance, pursuant to sections 22 and 23 of title 2 of the National Prohibition Act (27 USCA §§ 34, 35). The premises in question are at 112 to 114 West Forty-Fourth street, New York City, and are described in the bill as a lunchroom and soft drink establishment, located on the second floor and in the basement of that building. James Collins and two other defendants are named as proprietors of the business conducted on these premises. On February 25, 1927, the bill of complaint was filed and subpœna issued to the marshal. On March 4, May 5, and again on June 1, 1927, the marshal made his return that after diligent search he was unable to find James Collins within the Southern district of New York. On March 21, 1927, counsel for James Collins filed in the office of the clerk a notice, previously served upon the United States attorney, stating that he appeared specially in the action and would move upon the trial that the action be dismissed, upon the ground that the court had no jurisdiction of the cause of action by reason of the fact that he was a resident of the city and Southern district of New York, and was the tenant, lessee, owner, proprietor, and in possession of the premises and business described in the complaint, and had not been served with any process.

On July 20, 1927, an order was entered upon motion of the United States attorney as follows:

"Ordered that the subpœna and bill of complaint herein be served on the defendant James Collins by leaving a copy thereof, and of this order, at the place of business of the defendant, James Collins, 112–114 West Forty-Fourth street, city, county, and state of New York, with a person of proper age, if upon reasonable application admittance can be obtained and such person found who will receive it, or if admittance cannot be so obtained, or such a person found, by affixing the same to the outer or other door of the defendant's said place of business and by depositing another copy thereof, properly inclosed, in a postpaid wrapper addressed to the defendant at his place of business as above stated."

This order was based upon affidavits showing diligent, but futile, efforts of the marshal to find the defendant Collins and to ascertain his place of residence within the district. From these affidavits it is quite apparent that this defendant has evaded service with full knowledge of the pendency of this proceeding, meantime, no doubt, continuing to conduct the business of which complaint is made, and of which, it is stated in his behalf, he is the proprietor. Pursuant to this order, on July 25, 1927, the subpœna, bill of complaint, together with a copy of the order for substituted service, and the affidavits annexed thereto, were served upon the defendant Collins, by affixing a copy of the order, affidavits, subpœna, and bill of complaint to the outer door of the premises 112 to 114 West Forty-Fourth street. It is not disputed that the service conformed to the order, but it is insisted that the order was improper, and that any service in accordance with its provisions is a nullity.

Charles H. Tuttle, U. S. Atty., of New York City (Arthur H. Schwartz, Asst. U. S. Atty., of New York City, of counsel), for the United States.

M. Michael Edelstein, of New York City, for defendant Collins.

THACHER, District Judge (after stating the facts as above). However much the interests of justice may appear to demand the denial of this motion, the power of the court to predicate jurisdiction upon the service which has been made is challenged, and unless that service was sufficient to give jurisdiction the motion must be granted.

[1, 2] In behalf of the government it is sought to sustain the court's jurisdiction upon the theory that the suit is in rem against the premises; but this contention fails, because there has been no seizure of the res, and there can be none until the facts alleged have been litigated and the existence of a nuisance found. Security Bank v. California, 263 U. S. 282, 287, 44 S. Ct. 108, 68 L. Ed. 301, 31 A. L. R. 391; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. To proceed at all, the court must proceed in personam. There can be no doubt of the power of a court, when authorized by statute, to subject the person of a defendant to its jurisdiction without personal service of process upon him, if he be present and domiciled

within its territorial jurisdiction, provided the statutory method of substituted service is strictly followed, and is of such a character as to constitute due process of law.

[3] There is no statute of the United States which authorizes the method of service here in question, and it was not authorized under rule 13 of the Equity Rules promulgated by the Supreme Court, which provides: "The service of all subpœnas shall be by delivering a copy thereof to the defendant personally, or by leaving a copy thereof at the dwelling house or usual place of abode of each defendant, with some adult person who is a member of or resident in the family." This rule authorizes substituted service, but only at the defendant's usual place of abode. In terms it appears to exclude all other methods of substituted service, but in practice it has two exceptions: First, where by statute a different mode of service is prescribed; and, second, where the bill is purely ancillary to another suit, at law or in equity, in which case the subpœna may be served upon defendant's counsel, under the rule in Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845. See, also, Higgins v. Calif. Prune & Apricot Growers, 282 F. 550 (C. C. A. 2d). But these exceptions are more apparent than real, and do not indicate any power to depart from the rule when the process is upon an original bill, and the defendant has not appeared in court for any purpose connected with the subject-matter of the litigation, or authorized, expressly or impliedly, any other person to appear for him. The rule, in slightly varying form, has been in effect for more than 100 years, and yet not a single instance of substituted personal service upon special order of the court has been called to my attention which has been upheld, except where the order was authorized either by special statute or under the rule in Dunn v. Clarke, supra.

The case of Hyslop v. Hoppock, 12 Fed. Cas. 1141, No. 6,989, a decision of Blatchford, D. J., in this court is in point. There it was held, in a case quite similar to this, that in the absence of any statute, or of any rule having the force of statute, the court had no power to direct substituted service of a subpœna in equity. Decision was not rested upon the fact that the defendants were domiciled outside of the district, and it was held that, whether the defendants were inhabitants of the district or not, service could only be made pursuant to rule 13. By implication at least, the opinion in Central Ry. Signal Co. v. Jackson (D. C.) 254 F. 103, is to the effect that the only valid service upon a resident is that provided by rule 13, unless the suit be ancillary or there be statutory authority for some other form of service, and in United States v. American Bell Telephone Co. (C. C.) 29 F. 17, 32, it was said: "The court can acquire jurisdiction over parties in equity suits only by the service of process within the district in compliance with the requirements of this rule [equity rule 13] or by their voluntary appearance."

Some reliance is placed upon a dictum of Morrow, District Judge, in Shainwald v. Davids (D. C.) 69 F. 701, to the effect that substituted service may be ample where the defendant is concealing himself within the district, in order to avoid personal service upon him, and upon the statement of Putnam, Circuit Judge, in Gregory v. Pike (C. C. A.) 79 F. 521: "Rules 11 to 16 relate principally to matters which may be done as of course with reference to the issue and service of process, and they may, therefore, be understood to have no universal application to proceedings under the special orders of the Chancellor." These general statements were not made with reference to the question at bar, which was not decided in either case. That there are few precedents indicates adherence to the rule. In a word, the practice here pursued was unprecedented in the federal courts, and the dictum of Holmes, J., in New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660, that "a page of history is worth a volume of logic" is in point. In this connection it is significant to note that, in the preparation of the present equity rules the Supreme Court considered the English Chancery Rules. Mr. Justice Lurton visited England for the purpose of observing the operation of these rules in practice, and consulted the Lord Chancellor of England, who courteously responded in writing to the questions put to him by the learned justice. 226 U. S. 629.

At that time it was the English practice to serve the writ pursuant to special order for substituted service, if the defendant could not be found but was within the jurisdiction. Crane v. Juillon, (1876) 2 Ch. D. 220; Rafael v. Ongley, (1876) 34 L. T. 124; 23 Halsbury's Laws of England (1912) § 207; Daniels Chancery Practice (8th Ed.) 279 (1914). See, also, Summary of English Chancery Practice, which accompanied report of the bar committee of the Circuit Court of Appeals for this circuit to the Supreme Court, with their recommendations regarding changes in the equity rules. Hop-

kins, Federal Equity Rules (4th Ed.) 17. See, also, Watt v. Barnett, L. R. 3 Q. B. D. 183, 186, and Fry v. Moore, L. R. 1889, 23 Q. B. D. 395.

Having considered this practice under the English Chancery rules, the Supreme Court of the United States continued the old rule without material change, thus, I think, deliberately rejecting the English practice for substituted service of process. Under these circumstances, I do not think I may follow modern English precedents, which are not in conformity with the provisions of rule 13, although I am urged to do so because of the ruling of the Circuit Court of Appeals in this circuit in Individual Co. v. Union Co., 250 F. 625, 626, and of the Circuit Court of Appeals in the Sixth Circuit in Lindley v. Denver, 259 F. 83. In the latter case, Denison, Circuit Judge, said:

"We do not think that the Supreme Court, in adopting the new rules in 1912, and in thus declining longer to retain the English chancery practice of 1842 as a standard, intended to abolish the whole body of federal equity practice which had grown up under the old rule 90, and had become the accepted practice in the Supreme and all inferior courts. It is more reasonable to think that the fixed and settled equity practice of the federal courts in this country was intended to continue as it was in 1912, save as it was changed by these new rules; and this is, in effect, the conclusion of the Circuit Court of Appeals of the Second Circuit in the only case which has been brought to our attention touching the subject. Individual Co. v. Union Co., 250 F. 625, 626, 162 C. C. A. 641."

If in the federal practice which grew up under rule 90 of the old rules there were precedents taken from the English practice, no doubt those precedents, if not inconsistent with the new rules, would be authoritative; but there are none in point, and I am therefore constrained to reject the English precedents which have been cited.

[4] That there is much reason for insistence upon personal service, or in lieu thereof service at the usual place of abode, before subjecting a defendant to a personal judgment, is shown by the decision of the Supreme Court in McDonald v. Mabee, 243 U. S. 90, 37 S. Ct. 343, 61 L. Ed. 608, L. R. A. 1917F, 458, where in discussing a question of due process the court said: "We repeat, also, that the ground for giving subsequent effect to a judgment is that the court rendering it had acquired power to carry it out, and that it is going to the extreme to hold such power gained by even service at the last and usual place of abode."

Reference is made to general rule 17 of this court, which provides: "Service of any pleading, notice, or other paper in a civil cause shall be (unless this court on special application otherwise order) in accordance with the practice of the Supreme Court of the state of New York."

This rule, I believe, can have no application to the service of subpœna in equity upon individuals domiciled within the state, a subject which is completely covered by rule 13 of the Equity Rules promulgated by the Supreme Court; and it seems to me to have been carefully drawn, so as to avoid conflict with the provisions of that rule, since in terms it does not purport to cover the service of a subpœna, which is not a "pleading, notice, or other paper in a civil cause," if these words are to be interpreted under the rule of ejusdem generis, but is the original process of the court, which would have been mentioned, if intended to be covered by the rule.

It may be that, under established equity practice, persons who engage in the unlawful business of selling intoxicating liquors in this city will be able to evade personal service of process by concealing from the authorities their persons and the places where they live; but, if this be so, the evil cannot justify distortion of the practice which has so long prevailed in the federal courts of equity, and which governs the rights of all litigants. If the evil requires a remedy, it should be provided by special statute. In the absence of such a statute, I am constrained to conclude that this court was without power to direct substituted service as directed in the order of July 20, 1927, and accordingly that order and the purported service thereunder must be vacated.