## TRANSCONTINENTAL & WESTERN AIR, Inc., v. FARLEY, Postmaster General, et al.

### No. 427.

Circuit Court of Appeals, Second Circuit.
June 11, 1934.

John Thomas Smith, of New York City (David Scher, of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (Martin Conboy, Frank Chambers, and Edward J. Ennis, Asst. U. S. Attys., all of New York City, of counsel), for appellee John J. Kiely.

Shearman & Sterling and Donovan, Leisure, Newton & Lumbard, all of New York City (William J. Donovan, Frederick W. Jackson, and Carl Elbridge Newton, all of New York City, of counsel), for Boering Air Transport, Inc., National Air Transport, Inc., Pacific Air Transport, and Varney Air Lines, Inc.

Before MANTON, SWAN, and CHASE, Circuit Judges.

## MANTON, Circuit Judge.

Appellant was organized July 21, 1930, and assumed on October 23, 1930, with the approval of the Post Office Department, an air mail contract of October 1, 1930, granted to Western Air Express, Inc., and Transcontinental Air Transport, Inc. It surrendered its contract January 30, 1933, pursuant to an act of Congress, receiving in return a route certificate whereby it was granted the right, for a period ending April 5, 1936, to carry government air mail. This route certificate contained a full mutual release of both parties from the terms and obligations of the surrendered contract.

After entering upon the performance of the new contract, appellant complied with its terms and conditions and in reliance upon it made a large investment in equipment adapted to carry on the business of a carrier of air mail, passengers, and express, running into millions of dollars. It established a good will as a going concern.

February 9, 1934, the defendant Farley issued an order annulling the appellant's contract, effective February 19, 1934, pursuant to authority vested in him (section 432, title 39 USCA) and by virtue of his "general powers." The appellant was not served with any charges against it. No hearing was had nor any opportunity given to make a defense to any charges. The result of the order of annulment will be the disqualification of the appellant for a period of five years from bidding on any government air mail contract. Alleging that this act destroys the appellant's business by forcing it to discontinue its air mail service, and will cause a dispersal of its organization and personnel, it seeks an injunction restraining the Postmaster General from proceeding with the order of annulment and otherwise interfering with its contract. The action is tantamount to one for specific performance of contract.

Section 432, title 39, USCA, provides: "No contract for carrying the mail shall be made with any person who has entered, or proposed to enter, into any combination to prevent the making of any bid for carrying the mail, or who has made any agreement, or given or performed, or promised to give or perform, any consideration whatever to induce any other person not to bid for any such contract; and if any person so offending is a contractor for carrying the mail, his contract may be annulled; * * * the person so offending shall be disqualified to contract for carrying the mail for five years. * * * "

The appellant obtained an order that the defendant Farley and appellee Kiely show cause why they should not be restrained and enjoined, pending the hearing and determination of this suit, from enforcing or attempting to enforce against the complainant the order made by Farley. On the return of the order to show cause, the district judge denied a preliminary injunction. The decree entered not only denied the motion for a preliminary injunction, but also decreed "that the complaint herein be and the same hereby is in all respects dismissed."

Postmaster General Farley was not served with papers in the Southern district of New York, but appellee Kiely was. The latter filed a special appearance for the purpose of a motion to dismiss the bill on the ground that on the face of the bill the court had no jurisdiction of the subject-matter. His contention is that the relief prayed for called for supervision by the court of the performance of executive functions of the government and that the suit is in substance against the United States for specific performance of a contract and the court is without jurisdiction to grant the same.

On February 9, 1934, the President of the United States issued an order, in connection with the cancellation, ordering and directing that the Postmaster General, Secretary of War, and Secretary of Commerce, together with other officials of their respective departments, co-operate to the end that the necessary air mail service be afforded. It was further directed "that the Secretary of War place at the disposal of the Postmaster General such airplanes, landing fields, pilots and other employees and equipment of the Army of the United States needed or required for the transportation of mail during the present emergency by air over routes and schedules prescribed by the Postmaster General."

The bill of complaint filed asserts that the order of the Postmaster General is illegal and beyond his jurisdiction, that no notice was given the appellant of any violation of law or regulation or of any contemplated charge, and that the appellant is being deprived of its property and property rights without due process of law, without just compensation, and without a hearing. It declared that, as part of Kiely's duties as postmaster of New York City, and pursuant to instructions from the Postmaster General, he had caused air mail collected in his jurisdic-

tion and destined for points covered by appellant's route to be delivered to it, but, as a result of the order and cancellation, the mail was to be sent to the Army Service pursuant to the orders of the President above referred to; that this violated the terms of appellant's contract. Further, it is alleged that the Postmaster General intends to exclude the appellant from bidding for any air mail contract for a period of five years as a result of the annulment or cancellation of the contract, and that this will deprive the appellant of its property rights, and its good will will be destroyed if it suffered this damage, and the same could not be measured or adjudicated at law. The prayer for relief is that the defendants named be "enjoined from enforcing against appellant the order of cancellation of February 9, 1934, or from interfering with appellant's right to bid on contracts to carry United States mail or to otherwise carry out the lawful performance of its contract."

At the outset, we must consider an initial inquiry, and that is whether this suit is one against the United States. If the interest of the United States is substantially affected, the suit cannot be maintained, since the United States cannot be made a party to such a suit without its consent. U. S. ex rel. Goldberg v. Daniels, 231 U. S. 219, 34 S. Ct. 84, 58 L. Ed. 191. The determinative factor is the effect of the judgment. Louisiana v. McAdoo, 234 U. S. 627, 34 S. Ct. 938, 58 L. Ed. 1506. Even though the United States is not joined as a formal party defendant, if its interest is so directly involved that it is the real party in interest and any relief that might be given in such a suit will operate against the sovereign, it is an indispensable party, and the suit cannot be maintained. Morrison v. Work, 266 U. S. 481, 45 S. Ct. 149, 69 L. Ed. 394; Wells v. Roper, 246 U. S. 335, 38 S. Ct. 317, 62 L. Ed. 755; International Postal Supply Co. v. Bruce, 194 U. S. 601, 24 S. Ct. 820, 48 L. Ed. 1134; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. Ed. 599.

By virtue of article 1, § 8, of the Constitution of the United States, Congress has been given power to make all laws which shall be necessary and proper for carrying into execution the powers resting in the national government to establish post offices and post roads and to control and operate the carrying of the mails. McCulloch v. Maryland, 4 Wheat. 316, 417, 4 L. Ed. 579. The operation of the mails and the control thereof is a governmental function. In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092; Ex

parte Jackson, 96 U. S. 727, 24 L. Ed. 877; Masses Pub. Co. v. Patten, 246 F. 24, L. R. A. 1918C, 79, Ann. Cas. 1918B, 999 (C. C. A. 2); Bolognesi v. United States, 189 F. 335, 36 L. R. A. (N. S.) 143 (C. C. A. 2). The duty generally of the Postmaster General to superintend the business of his department and execute all laws relative to the postal service is provided by statute. 5 U. S. C. §§ 361, 369 (5 USCA §§ 361, 369). The courts will not interfere with the discretion or judgment of the Postmaster General. Decatur v. Pauling, 14 Pet. 497, 10 L. Ed. 559, 609; Work v. Rives, 267 U. S. 175, 45 S. Ct. 252, 69 L. Ed. 561. Individuals will not be permitted to carry on activities which interfere with this function so imposed upon the national government. In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092. The appellant, recognizing that it may not sue the government without its consent, attempts to sue the two defendants individually on the theory that what has been done by the Postmaster General was a wrongful act in excess of his authority; therefore, since not a governmental act, he may be enjoined. But it is attempting indirectly to attack where it may not attack directly. In Re Ayers, 123 U. S. 443, 502, 8 S. Ct. 164, 181, 31 L. Ed. 216, the court said:

"A bill, the object of which is by injunction, indirectly, to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, must also, necessarily, be a suit against the state. In such a case, though the state be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of its contract, the suit is still, in substance, though not in form, a suit against the state."

In Wells v. Roper, 246 U. S. 335, 38 S. Ct. 317, 62 L. Ed. 755, Wells contracted with the United States to furnish automobiles and chauffeurs for use in delivering and collecting mail matter. One of the provisions of the contract was a stipulation that "any or all of the equipments contracted for herein may be discontinued at any time upon ninety days' notice from the said party of the first part (Postmaster General)." The Postmaster General was authorized by an appropriation bill to use moneys for the purchase of vehicles and for the operation of an experimental service. He decided to conduct the experiment in Washington, and deemed it necessary to discontinue the service per-

formed by the complainant. Notice was given to the complainant of intention to cancel the contract. Wells sought an injunction to restrain the administrative officers from canceling the contract. Without examining the question of whether the postmaster properly canceled the contracts in accordance with the stipulations, the court held that the suit was substantially one against the United States and therefore beyond the jurisdiction of the court. And it said:

"The effect of the injunction asked for would have been to oblige the United States to accept continued performance of plaintiff's contract, and thus prevent the inauguration of the experimental service contemplated by the act of 1914—a direct interference with one of the processes of government. The argument to the contrary assumes to treat defendant, not as an official, but as an individual who, although happening to hold public office, was threatening to perpetrate an unlawful act outside of its functions. But the averments of the bill make it clear that defendant was without personal interest and was acting solely in his official capacity and within the scope of his duties. Indeed, it was only because of his official authority that plaintiff's interests were at all endangered by what he proposed to do."

An attempt is made to distinguish the Wells Case from the one at bar, upon the claim that it is not a suit against the United States, that by the terms of the contract authority to cancel was conferred on the Postmaster General, and therefore, since he had authority, it is immaterial whether he canceled in accordance with the terms of the contract. Whether, in view of the statute to which we have called attention, the Postmaster General had legal authority to annul contracts, or whether in performing the acts complained of he was acting in his governmental capacity, we express no opinion. The Wells Case cannot be differentiated upon the ground that Congress itself had authorized the cancellation of the Wells contract by placing money at the disposal of the Postmaster General to try out an experimental service. That statute (38 Stat. 295, 300) reveals that it is no more than a provision in an appropriation bill allowing an expenditure of money for a particular purpose. Nowhere can there be found a mandate of the Legislature ordering a cancellation of an existing contract. In the absence of specific direction from Congress to cancel the Wells contract, it is clear that the Wells Case is authoritative here. In Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613,

70 L. Ed. 1074, an action to enjoin officials acting entirely beyond the scope of their authority from trespassing upon complainant's property, the Supreme Court cited with approval the rule of the Wells Case and distinguished it there. In Morrison v. Work, 266 U. S. 481, 45 S. Ct. 149, 151, 69 L. Ed. 394, the court distinguished cases in which injunctions against governmental officials are allowed, saying:

"The case at bar is unlike those in which relief by injunction has been granted against the head of an executive department, or other officer, of the government to enjoin an official act on the ground that it was not within the authority conferred, or that it was an improper exercise of such authority, or that Congress lacked the power to confer the authority exercised. In those cases the act complained of either involved an invasion or denial of a definite right of the plaintiff (American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S. Ct. 33, 47 L. Ed. 90), or it operated to cast a cloud upon his property (Noble v. Union River Logging R. R. Co., 147 U. S. 165, 13 S. Ct. 271, 37 L. Ed. 123).

In American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S. Ct. 33, 47 L. Ed. 90, the Postmaster General based his action on section 3929 and section 4041 of the Revised Statutes (39 USCA § 259 and § 732). In granting relief there, the court did not direct the manner in which the mails were to be transmitted within the postal system, which was a matter under the control of the Post Office Department. The courts will enforce ministerial duties required of executive officers by mandates of Congress and will enjoin acts such as trespass, a step taken beyond the scope of statutory authority or jurisdiction of executive officers, but they will not interfere with matters intrusted by Congress to the discretion of the heads of executive departments of the government. Work v. Rives, 267 U. S. 175, 45 S. Ct. 252, 69 L. Ed. 561; Lane v. Hoglund, 244 U. S. 174, 37 S. Ct. 558, 61 L. Ed. 1066; Noble v. Union River Logging R. Co., 147 U. S. 165, 13 S. Ct. 271, 37 L. Ed. 123; Decatur v. Paulding, 14 Pet. 497, 10 L. Ed. 559, 609.

There was no jurisdiction in the District Court to entertain an order affecting Postmaster General Farley. Robertson v. Railroad Labor Board, 268 U. S. 619, 622, 45 S. Ct. 621, 69 L. Ed. 1119. Service upon the Postmaster General in Washington, D. C., was not good under Rule 13 of the Equity

Rules of the Supreme Court (28 USCA § 723) as substituted service. Munter v. Weil Corset Co., 261 U. S. 276, 43 S. Ct. 347, 67 L. Ed. 652; U. S. v. McCrory, 26 F.(2d) 189 (C. C. A. 2); U. S. v. American Lumber Co., 85 F. 827, 831 (C. C. A. 9); U. S. v. Waverly Club, 22 F.(2d) 422 (D. C.).

The law is now well established that, if an indispensable party is not joined, the suit must be dismissed. Gnerich v. Rutter, 265 U. S. 388, 44 S. Ct. 532, 68 L. Ed. 1068; Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 69 L. Ed. 411.

The appellant may not obtain specific performance of its contract against the United States and interfere with the process of government without at least making it a party, and, since no consent has been granted, the suit cannot be maintained. Wells v. Roper, supra; Goldberg v. Daniels, supra; Hagood v. Southern, 117 U. S. 52, 6 S. Ct. 608, 29 L. Ed. 805.

The bill should have been dismissed for want of jurisdiction. The decree must therefore be reversed and a decree entered dismissing the bill for lack of jurisdiction.

Ordered accordingly.