ROOD v. GOODMAN.

GOODMAN v. ROOD.

Nos. 7872, 7921.

Circuit Court of Appeals, Fifth Circuit.

April 3, 1936.

Rehearing Denied April 29, 1936.

Gordon Gibson and Nat B. King, both of Laredo, Tex., and David E. Hume, of Eagle Pass, Tex., for Rood.

Douglas W. McGregor, U. S. Atty., and Forrest Lee Andrews, Asst. U. S. Atty., both of Houston, Tex., for Goodman.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant is an astrologer. He lives in Laredo, Tex., and until stopped by a fraud order, was conducting there an astrological mail order business of considerable proportions. Appellee is the local postmaster at Laredo. In the conduct of his business of commercially practicing "the most ancient art or science of divining the fate or conduct of human beings from indications given by the positions of the stars," appellant operates on both sides of the Rio Grande, and uses the most modern systems of communication and transport. The soliciting or selling end of his business is on the Mexican side. There broadcasting from radio station XENT, Nuevo Laredo, he advertises and offers his wares for sale. These are astrological forecasts for the year, each compiled according to one of the twelve signs of the zodiac, his ability to answer questions, "by the use of astrology, numerology, psychology," and "horoscopes which he erects by means of astrology for any person who sends him $15 and the date of his birth." This is the part his question answering plays. As part of the broadcast he answers one question free, and offers to answer three questions for each person purchasing a forecast. The delivering and receiving end of his business is on the American side. There he uses a local office, where he employs seventeen girls as stenographers and mailing clerks, and the United States mail. Thus playing on and ministering to human credulity and folly, he was scattering and sowing from the Mexican side, and reaping and gathering on the American side of the river, a perennial harvest.

Appellee having under the authority and direction of a postal fraud order, issued March 28, 1933, stopped delivery of appellant's mail, and commenced returning it to the senders, appellant filed this suit to enjoin her from doing so. His bill, alleging his proficiency as an "astrologer, numerologist, and psychologist," and that he is now, and has been, since October 7, 1934, engaged in the legal and legitimate business of practicing his profession as an astrologer in the city of Laredo, Tex., alleged: That he broadcasts from Nuevo Laredo, Mexico, and receives his mail, which is in great volume, in Laredo, Tex. That broadcasting as an astrologer, he offers for sale for $1 an astrological forecast which contains a true, earnest, and sincere effort on his part to disclose astrological and numerological information, and also answers free one question, and offers to answer three more for each purchaser of his book. That in offering the book he uses no false or fraudulent pretenses or representations. He does not claim that it or he is infallible. He states that it merely contains information on these subjects. That as part of his system of selling he promises to return the dollar if the purchaser is not satisfied and that he has always done so. That in answering questions he makes it clear that he answers them by the use of his science, but that he does not purport to be infallible or possess supernatural powers, or claim to be a clairvoyant, a mindreader, or psychic, nor does he state that such answers are correct. That he discards and eliminates from his work clairvoyance, mind reading, spiritualism, and crystal gazing. That he also offers to make an individual astrological horoscope for $15. That by the use of his radio station he has built up a mail order business averaging $500 per day. He pleaded, too, that on August 14, 1934, when he was operating at Eagle Pass and New Orleans, he was ordered to show cause why a fraud order should not be issued against him. That in order to obviate the necessity of a hearing, he closed these businesses and signed a stipulation in which he agreed to discontinue, and he has discontinued, the sale of Cell Food Tablets, and Or-Ga-Tone, and that he would not in future solicit any money in payment for answers to questions upon "statements of his that he would and could correctly answer them" and that he has kept that agreement. He further alleged that though he has not violated the stipulation, nor in any way used the mails to defraud, and though no evidence was presented to the Postmaster General that he had done either, that official has found that he has done both, and has issued a fraud order on that finding.

Attached as exhibits are the stipulation, the finding of the Solicitor General before whom the stipulation was made, that in violation of it plaintiff was resuming his fraudulent mail order scheme, and a recommendation that a fraud order issue. Attached, too, is the postal fraud order. This recites that: "It has been made to appear to the Postmaster General, upon evidence satisfactory to him, that defendant is conducting a scheme or device for obtaining money through the mails, by means of false and fraudulent pretenses, representations and promises." The stipulation, after reciting, "That the enterprise which plaintiff was then

conducting through the mails from Eagle Pass, Texas and New Orleans, Louisiana, over a radio broadcasting station would be discontinued," recited: "That the enterprise heretofore operated through the mails as well as by means of radio broadcasts consisting of the obtaining of remittances through the mails upon pretenses, representations, and promises to the effect that said party, by means of astrology, numerology, harmonious vibrations, psychology or occult science, can and will correctly answer any question or questions submitted to him, has been absolutely discontinued and abandoned, and will not be resumed in the future by affiant under said name or any other name or names."

The defendant moved to dismiss the bill on three grounds: (a) The Postmaster General is a necessary, proper, and indispensable party to the action to enjoin the fraud order; (b) the plaintiff's bill shows that he is acting in violation of the stipulation; (c) that it shows that he has not exhausted his legal and administrative remedies before applying to a court of equity. Subject to the motion to dismiss, she answered in effect denying the claims of good faith, and alleging that plaintiff was deliberately exploiting the credulity of his listeners to obtain their money by a scheme and on pretenses and representations which he knew were false.

Plaintiff testified to his ability to foretell not every time, but many times, and to his sincere belief in that ability. He testified, too, to his facility in answering questions, and the long time he put in in doing so. He declared that he would work from 7:30 or 8 o'clock in the morning until one o'clock at night, and would personally attend to and bring his astrological, numerological, and psychological knowledge to bear upon, answering four to six thousand questions a week; that working with a dictaphone he answered from a thousand to twelve hundred questions a day. He affirmed and reaffirmed that he believed in the honesty and integrity of the business he was conducting, and that he was not trying to defraud or deceive any one. In support of his claims for astrology and of his belief in it, he offered the testimony of an astrologer, his one time tutor. He offered, too, the testimony of persons who had heard his broadcasts, to the effect that he had never made any positive statements or claims that he could absolutely foretell or foresee the future, but that he always stated that he was advising to the best of his ability. He proved, too, that to all persons expressing dissatisfaction with the booklets he sent their money back. There was general testimony as to the power and ability of astrologers in general, and plaintiff and his witnesses in particular, to forecast by reading the stars. There was testimony, too, that the answers of plaintiff to questions sent him by government agents had all been wrong. The case, in short, was pitched below not on the existence or nonexistence of the science of astrology, nor on the belief or nonbelief of persons in general in it, nor on whether the general belief was a judicious or a foolish one. It was pitched on whether or not plaintiff was, in good faith and honestly believing in his profession, practicing astrology, or was, with the intention of obtaining money by false pretenses, deliberately playing on credulity.

The District Judge heard and saw the plaintiff. He was in a better position than we are to see and judge whether the truth was in him. He found that apparently astrology included many different kinds; and that many people believed in some kind of astrology. As to the particular kind plaintiff was practicing, and as to the good faith attending its practice by him, the District Judge found: "This form of astrology I find to be neither a science nor a religion, but fictitious and wholly without truth or merit. Plaintiff's business was not carried on in good faith, but for the purpose of getting money from and swindling the public. Plaintiff did not believe his business was either scientific, religious or true. The sale of the books was but a ruse and subterfuge. The real business of plaintiff was the answering of questions, and it was for answering questions that he, in the main, received money from the public." He found, too, that plaintiff had violated both the letter and the spirit of his agreement, and that since he was, when the fraud order was issued, engaged in conducting a scheme to defraud, his bill was wholly without equity, and should be dismissed.

Appellant argues here that the District Judge tried plaintiff's science, instead of plaintiff; that because he had no belief in or patience with the science or system plaintiff was following, the District Judge found that plaintiff had none.

In a brief, interestingly and ably endeavoring to make the worse cause seem the better, appellant's counsel strongly urges that the effect of the fraud order and the injunction, if sustained, will be to deny the right of persons to believe in or practice a

religion or belief, if it does not square with the commonly accepted beliefs, the religion or belief, in short, of the triers. In this argument appellant does not overlook, he endeavors to overcome, the greatly damaging effect upon his cause of the trial judge's finding that his client was without faith in his own pretensions. Frankly admitting that this finding is a serious obstacle in his way, he vainly tries to maintain that the evidence does not support it.

■ The long road that men have had to come from ignorance and superstition, though once beset by the hosts of intolerance and bigotry, is not now so beset, at least in America. Freedom of thought, the right of men to sincerely think and believe what they will, and to honestly disseminate that belief, is guaranteed in the bills of rights and in the spirit of the laws, beyond the power of any government official to prevent its dissemination, because the particular brand of belief, as belief, is objectionable to or not understandable by him. American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90. That power is not claimed, it has not been asserted, here. What is claimed, what has been asserted, is the power to prevent charlatanism, quackery and imposture, the cunning pretense of belief, to beguile and delude men in order to make dupes of and prey upon them. It is this that the statute strikes at. It is this the fraud order in this case was issued to prevent. It is this which stayed the hand of the District Judge from granting the injunction. It may not be doubted that this is peculiarly a case in which the findings of the District Judge are entitled to the greatest weight. If, in the face of the unrealities, the verbose unmeaningness and emptiness of plaintiff's claims for his science, and of the shrewdness and business cunning displayed in his elaborate arrangements for capitalizing on credulity, the District Judge had looked upon him and found him guileless, if, in the face of the eager cupidity of the plan, as it appears on the cold record, he had, looking on plaintiff, found him the simple, credulous gullible soul his protestations make him out to be, we would have had great difficulty in overruling that finding; for the district judge had the opportunity to, and it was his function, to search the plaintiff out. It was for him to weigh his good faith in the balance, and to say if it was wanting. He did this, and found it wholly absent. We should not, we cannot, find otherwise. We think the evidence overwhelms in favor of the finding that the case was entirely without equity. It was without equity under the stipulation he had made and breached. It was without equity under the evidence.

■ Appellee, upon the authority of Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068, Transcontinental & Western Air v. Farley (C.C.A.) 71 F.(2d) 288, 290, urges that the judgment should not be affirmed; that it should be reversed, with directions to dismiss for want of the presence, as a party to it, of the Postmaster General.

We do not think so. The suit was not as appellee seems to think it was, one to set aside the fraud order. Degge v. Hitchcock, 229 U.S. 162, 33 S.Ct. 639, 57 L.Ed. 1135. It was merely a suit against one having in his possession property belonging to the plaintiff, and absent a valid fraud order, under a duty to deliver it to him. The Postmaster General, upon information satisfactory to him, that the postoffice is being used to carry on a fraudulent scheme, may, of course, issue a fraud order, but until a valid fraud order is issued against him, a citizen of the United States has, under the laws as they now stand, not a mere privilege, but a right, to the use of the mails, and in the course of regular deliveries, to receive mail sent to him. When, then, a postmaster unlawfully withholds delivery, the owner of the mail has a right to proceed against the postmaster to prevent that wrongful interference with his property and his rights. This is not a case in which the plaintiff is attempting to compel a subordinate official to exercise a discretion which only his superior can exercise. It is a case in which an official is acting affirmatively against a plaintiff, by seizing his mail, and preventing its delivery. It is that affirmative action which the suit seeks to enjoin. Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Yarnell v. Hillsborough Packing Co. (C.C.A.) 70 F.(2d) 435; Ryan v. Amazon Pet. Corp. (C.C.A.) 71 F.(2d) 1. There have been some civil suits over fraud orders brought against the Postmaster General, but most of the suits of that kind have been brought and maintained against the local postmaster. American School of Magnetic Healing v. McAnnulty, supra; Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092; and in the inferior courts, Enterprise Mfg. Ass'n v. Zumstein (C.C.A.) 67 F. 1000, 1002; Crane v. Nichols (D.C.) 1 F.(2d) 33; Aycock v. O'Brien (C.C.A.) 28 F.(2d) 817; and other cases without number. It is

only recently, and in only two District Court cases, that it has been claimed that the Postmaster General is an indispensable party to such a suit. In one of these, Wheeler v. Farley, 7 F.Supp. 333, the proposition was sustained; in the other Bailey, Gaunce Oil & Ref. Co. v. Duncan (D.C.) 10 F.Supp. 280, it was denied.

 If the position the government takes, that the Postmaster General is an indispensable party to these suits, were sound, all of these suits should have been brought in Washington, for process will not run to sue the Postmaster General elsewhere. Transcontinental & Western Air v. Farley (C.C.A.) 71 F.(2d) 288, 290. But if we assume in this case that the Postmaster General's presence as a party to the suit was indispensable to granting plaintiff full relief, and that the District Judge ought not to have entered a decree against the local postmaster because of the absence of the Postmaster General from the suit, it does not follow that the decree appealed from here may not stand. The defect of want of parties does not go to the jurisdiction of the court to entertain the suit; it goes to its discretion as a court of equity, to entertain it. When it plainly appears that no prejudice has been done to the absent party by the decree, and that the decree as to the parties before it is right and completely effective, it ought to stand and the litigation come to an end. Edenborn v. Wigton (C.C.A.) 74 F.(2d) 374; Sneed v. Phillips Petroleum Co. (C.C.A.) 76 F.(2d) 785.

The judgment is affirmed.