**BERMAN v. AFFILIATED ENTERPRISES, Inc., et al.**

**No. 66.**

District Court, D. Maine, N. D.

Dec. 23, 1936.

Christopher S. Roberts, of Rockland, Me., for plaintiff.

W. R. Pattangall, of Augusta, Me., for defendants.

PETERS, District Judge.

Hearing was had on a motion to quash the service of the subpœna. One defendant is a corporation alleged in the plaintiff's bill to be organized under the laws of Colorado, located and having its principal place of business there; and the other an individual, a citizen of Massachusetts and resident there. The return of the officer serving the process recites that it was served upon both the corporation and individual defendant by giving a copy of the subpœna in hand to one O'Donnell, at Van Buren, Me., referred to in the return as an agent of both defendants.

The plaintiff being a citizen of Maine and the jurisdiction of this court invoked on the ground of diversity of citizenship, the suit may be maintained here if defendants are found and served here. The return of the officer is not conclusive, and even after removal from the state court (which is not the case here), the moving party would have the right to the opinion of the federal court as to the validity of the service of process. Mechanical Appliance Company v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272.

1. The validity of the service upon the defendant corporation depends upon whether it was doing business in Maine in such a way as to be considered present here and whether the alleged agent upon whom service was made was an authorized agent of the corporation.

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent." Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

"The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive business, like 'qui facit per alium facit per se.' It flows from the fact that the corporation itself does business in the state or district

in such a manner and to such an extent that its actual presence there is established." Bank of America v. Whitney Cent. Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 312, 67 L.Ed. 594.

The Supreme Court has refrained from establishing any exact formula, but has uniformly held that each case must stand upon its own facts. International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537.

The defendant corporation, appearing specially for the purpose, protests the service and asserts that it was not doing business and had no authorized agent in Maine.

■ The facts, established by affidavits, are substantially as follows:

The defendant corporation claims to control the right to use an advertising plan or scheme which it calls "Bank Night," apparently used by owners of moving picture theaters to stimulate attendance. The individual defendant, Heffner, with an office located in Boston, was what might be called a distributor of this plan for New England, under contract with the corporation, and, through salesmen, as well as directly by correspondence, solicited the use of this plan by theater owners in Maine and elsewhere. Neither the corporation nor Heffner has had any place of business in Maine. There is no evidence that the corporation employed any salesmen or agents or has authorized any such to act for it in Maine. There is evidence that the man O'Donnell, upon whom service was made, was the agent of the defendant Heffner, and that he circulated and solicited the execution of printed forms of a contract, called "Bank Night License Agreement," purporting to be between Affiliated Enterprises, Inc., the corporation defendant, and theater owners; that these contracts when signed by a theater owner who desired the right to use the plan, were also signed by O'Donnell over the word "salesman," and sent to Affiliated Enterprises to be executed by one of its officers. The contract, by its terms, was not valid until accepted and executed by the corporation. The letters written by Heffner from his Boston office to customers are on letterheads carrying the words, "New England Bank Night. 12 Winchester Street, Boston, Mass. Office of Roy E. Heffner." The letterheads of O'Donnell carry the printed words, "Bank Night Company. P. C. O'Donnell, Special Infringement Investigator and Representative."

There is evidence that O'Donnell solicited the execution of contracts to be sent to the Affiliated Enterprises to be approved and executed, and that in one case he received $12, and in another that he "received compensation." It appears that at least on one occasion a contract when executed by Affiliated Enterprises in Colorado was mailed from its office in Denver directly to the other party who had signed the contract in Maine, expressing thanks for the business and stating that the license fee had been raised to $15 per week. How this was regularly collected or to whom sent does not appear. The affidavit of Heffner is to the effect that O'Donnell was employed by him on a commission basis to solicit the contracts which were to be effective when approved by Affiliated Enterprises. He also testifies that O'Donnell was not employed by or known to Affiliated Enterprises in any way.

The evidence shows that the scheme of which the corporation claims proprietorship was sold in Maine and that the corporation received benefits from it and that considerable business of that kind was being done, but it fails to show any transaction in Maine initiated and carried through by the corporation itself or by any person authorized to act as its agent. The contractor or distributor, Heffner, was the person doing business directly and by his agent but this is not sufficient to authorize the conclusion that the corporation itself was found or was present in the state. Barnes v. Maxwell Motor Sales Corporation, 172 Ky. 409, 189 S.W. 444, Ann.Cas.1917E, 578.

■ 2. As to the individual defendant, Heffner, service was not made upon him but upon O'Donnell, stated in the return of service to be Heffner's agent, as he undoubtedly was. This is not a good service under the circumstances. Equity Rule 13 (28 U.S.C.A. following section 723) provides that a subpoena shall be served by delivering a copy thereof to the defendant personally, or by leaving it at his dwelling house or usual place of abode, with some adult person who is a member or resident in the family. The rule au-

thorizes substituted service, but only at the usual place of abode. U. S. v. Waverly Club (D.C.) 22 F.(2d) 422.

3. The plaintiff contends that defendants waived objections to the service of process when they first filed a motion to dismiss. That motion, however, alleged that the court had no jurisdiction, which, of course, it has not, if there was no service. When it appeared at the hearing that defective service was the ground of the motion to dismiss, a motion to quash the service was substituted for it, at the suggestion of the court. "Objection to jurisdiction is not waived by filing a demurrer for the special and single purpose of objecting to the jurisdiction." Rose's Federal Procedure (3d Ed.) § 304; Southern Pacific Company v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942.

The motion to quash the service must be sustained, and, as it is not understood that any amendment possible will avail the plaintiff, the bill will be dismissed with costs.